Docket No. 84244–Agenda 21–May 1998.

DENNIS CLEMONS, Appellant, v. MECHANICAL DEVICES 

 COMPANY, Appellee.

Opinion filed December 3, 1998.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, Dennis Clemons, filed a complaint in the circuit court of McLean County against his former employer, Mechanical Devices Company (defendant). Plaintiff alleged that he was wrongfully discharged in retaliation for filing a workers' compensation claim. A jury found for plaintiff and assessed damages against defendant in the amount of $63,520.23. On appeal, the appellate court reversed and remanded for a new trial. 292 Ill. App. 3d 242. We granted plaintiff's petition for leave to appeal (166 Ill. 2d R. 315(a)) and now affirm the judgment of the appellate court.

I. BACKGROUND

In August 1988, plaintiff began working for defendant as a machine operator. On June 1, 1989, plaintiff injured his back while at work and informed his foreman, Clarence Hatfield, of the injury. The next day, at defendant's request, plaintiff saw Dr. Larry Nord for this injury. Dr. Nord prescribed pain medication. Plaintiff worked that day and the rest of June. The bills incurred in June as a result of this injury were processed and paid by defendant's workers' compensation carrier.

On July 1, 1989, plaintiff heard his back pop while at work. He worked the remainder of his shift, and at trial stated that, upon leaving, he told Hatfield that his back was still bothering him. Hatfield testified that he did not recall plaintiff reporting this injury. Further, Linda Fillingham, defendant's vice- president and office manager, testified that there was no report of this injury.

On July 3, 1989, plaintiff's back popped again while he was at home bending over to tie his shoes. He called defendant and informed someone in the office that he was not coming to work because he had hurt his back. Because Dr. Nord was not available, plaintiff saw Dr. Neil for this injury. Dr. Neil instructed plaintiff not to return to work, and he remained off work until July 27, 1989.

Plaintiff, however, kept a previously scheduled appointment with Dr. Nord on July 10. Plaintiff testified that, while at Dr. Nord's office, someone from defendant's office called Dr. Nord's secretary and told her not to file the July injury as a workers' compensation claim. Fillingham testified that she told Dr. Nord to keep his records straight between the June and July injuries, for the July injury was to be processed under defendant's health insurance program.

Plaintiff also testified that he had a conversation with Irene Sperry, defendant's co-owner. She told him that she knew the July injury was not work related. According to defendant, she stated that if he filed a workers' compensation claim relative to that injury, he would be discharged. Plaintiff stated that he believed Sperry's claim. Plaintiff received a health insurance claim form for the July injury in the mail. Plaintiff completed the form with the help of his wife. He indicated on the form that the July injury was not work related.

Plaintiff returned to work on Thursday, July 27, 1989. He worked full eight-hour shifts on both July 27 and July 28. Plaintiff then took July 31 through August 4 off as previously scheduled vacation. In accordance with company policy, plaintiff received compensation in advance for his vacation on July 28, 1989. He was not paid for working July 27 and July 28 at that time.

While on vacation, plaintiff saw Kevin Miller, an attorney, to discuss a possible workers' compensation claim. Miller testified that he telephoned defendant the same day inquiring as to the identification of defendant's workers' compensation carrier. He also testified that plaintiff signed a blank workers' compensation application in his office that day.

On August 4, 1989, plaintiff went to defendant to pick up his paycheck for working July 27 and July 28. He was told that he would receive his pay for those two days in his August 11 paycheck. Fillingham testified that this method was consistent with how it paid employees during their vacation periods. Plaintiff insisted that he be paid that day.

Fillingham further testified that attorney Miller called defendant and requested plaintiff's check. She told Miller that plaintiff could come in and pick up his check. When plaintiff arrived he was given his check and told by Fillingham that he was being treated in a manner different from the other employees, which could not be allowed. Plaintiff testified he was told that if he took his check for July 27 and July 28 he would be quitting. Plaintiff took his check and did not work for defendant again.

Subsequently, plaintiff filed a one-count complaint in the circuit court of McLean County. He alleged wrongful discharge in retaliation for filing a workers' compensation claim. Plaintiff voluntarily nonsuited the action in January 1994. In January 1995, plaintiff again filed a one-count complaint in the circuit court of McLean County, alleging wrongful discharge for filing a workers' compensation claim.

During the trial, plaintiff presented evidence attempting to establish that defendant's method of paying him was in violation of the Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1 
et seq
. (West 1994)). Over defendant's objection, plaintiff's counsel had Fillingham read portions of the Wage Act while examining her as an adverse witness, and questioned her about the legality of defendant's method of payment in light of the Wage Act. Plaintiff focused on section 4 of the Wage Act, which provides, “All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned.” 820 ILCS 115/4 (West 1994).

At the close of evidence, the trial court allowed plaintiff to amend his complaint. In relevant part, plaintiff amended his complaint by adding paragraph 13, which stated: “On August 4, 1989, in retaliation of Plaintiff's exercise of his statutory rights, Defendant wrongfully discharged Plaintiff.” In granting plaintiff leave to amend the complaint, the trial judge stated: “In regard to paragraph 13, the statutory rights referred to are in fact the workmen's comp[ensation] statutory rights.” In the complaint, plaintiff did not allege a claim based on a violation of the Wage Act, nor did he allege that he was discharged in retaliation for pursuing rights afforded him under the Wage Act. During closing arguments, however, plaintiff's attorney stated: “If Mechanical Devices starts discharging their at-will employees because of the color of their skin, they are liable. If they start discharging employees for their gender, they are liable. If they start discharging their employees in violation of Illinois statute, they are liable. It is as simple as that. Read the statute.”

At plaintiff's request, and over defendant's objection, the trial court instructed the jury regarding the Wage Act. The instruction informed the jury that the Wage Act provides that wages earned during a weekly pay period must be paid for those services no later than seven days after the weekly pay period ends. Further, any employer who knowingly discharges or discriminates against any employee who has sought to exercise his rights under the Act is guilty, upon conviction, of a Class C misdemeanor. In response to this instruction, defendant tendered its own instruction, which the judge refused to give, stating that the plaintiff was discharged for a wage dispute and “the determinative factor was not the intent or filing of a workman's compensation claim.” The jury found for plaintiff and awarded him damages against defendant of $63,520.23.

On appeal, the defendant argued that the trial court erred in admitting evidence regarding the Wage Act and instructing the jury on portions of the Act. Defendant contended that the Wage Act was irrelevant to the issues in the case. The appellate court agreed with the defendant and reversed and remanded the cause for a new trial. 292 Ill. App. 3d 242. The appellate court concluded that evidence relating to the Wage Act was “wholly irrelevant” to whether plaintiff was wrongfully discharged in retaliation for filing a workers' compensation claim. 292 Ill. App. 3d at 251. Further, the appellate court found the admission of evidence relating to the Wage Act, the instruction to the jury on the Wage Act, and plaintiff's counsel's comments during closing arguments “seriously prejudiced Mechanical in its defense so as to deprive Mechanical of a fair trial.” 292 Ill. App. 3d at 253. We allowed plaintiff's petition for leave to appeal (166 Ill. 2d R. 315(a)) and, for the reasons that follow, affirm the judgment of the appellate court.

II. ANALYSIS

A. Relevance of the Wage Act

We note at the outset that plaintiff's amended complaint alleges only that he was discharged in retaliation for filing a workers' compensation claim. Nowhere does the amended complaint allege that defendant violated the Wage Act or that plaintiff was discharged in retaliation for invoking his rights under the Act. The amended complaint, which was filed after the close of evidence, alleged in paragraph 10 that “defendant *** intentionally interfered with *** plaintiff's rights under the Illinois Workers' Compensation Act in violation of 820 ILCS 305/4(h).” Paragraph 13 of the amended complaint further alleged that “in retaliation of plaintiff's exercise of his statutory rights, defendant wrongfully discharged plaintiff.” The trial judge, when granting plaintiff leave to file an amended complaint, noted that the “statutory rights” referred to in paragraph 13 “are in fact the workmen's comp[ensation] statutory rights.” Moreover, during arguments on plaintiff's motion for leave to file an amended complaint, plaintiff's counsel acknowledged that plaintiff was not alleging a violation of the Wage Act in this case. With this in mind, we address plaintiff's arguments.

Plaintiff initially contends that the appellate court's ruling is incorrect because it would allow employers to assert an illegal defense to defeat a claim of retaliatory discharge.

To recover damages for the tort of retaliatory discharge predicated upon the filing of a workers' compensation claim, an employee must prove: (1) that he was an employee before the injury; (2) that he exercised a right granted by the Workers' Compensation Act; and (3) that he was discharged and that the discharge was causally related to his filing a claim under the Workers' Compensation Act. 
Gonzalez v. Prestress Engineering Corp.
, 194 Ill. App. 3d 819, 823 (1990). Moreover, if an employer chooses to come forward with a valid, nonpretextual basis for discharging its employees and the trier of fact believes it, the causation element required to be proven is not met. 
Hartlein v. Illinois Power Co.
, 151 Ill. 2d 142, 160 (1992). Concerning the element of causation, the ultimate issue to be decided is the employer's motive in discharging the employee. 
Hartlein
, 151 Ill. 2d at 163.

In retaliatory discharge cases, an employer is not required to come forward with an explanation for an employee's discharge, and it remains plaintiff's burden to prove the elements of the cause of action. An employer may choose to offer a defense if it desires, however. In the present case, defendant chose to assert a defense to plaintiff's cause of action. Defendant maintained that plaintiff was discharged not in retaliation for filing a workers' compensation claim, but because of a dispute over the payment of his wages. Before this court, plaintiff argues that defendant's stated reason for the discharge was a violation of the Wage Act and that an employer may not contest the causation element of the tort by proffering an illegal defense. We disagree.

The alleged illegality of defendant's explanation for plaintiff's discharge is not relevant here and does preclude the employer from offering that reason as a defense to plaintiff's cause of action. The burden remains on the plaintiff to establish the elements of his cause of action, which here involved the discrete claim that the defendant wrongfully discharged plaintiff in retaliation for seeking recovery under the Workers' Compensation Act. If the trier of fact rejects plaintiff's evidence, or instead accepts defendant's proffered reason for the termination, then plaintiff has failed to meet his burden of proof. In any event, we do not believe that a defendant is limited in the defense it may offer to a plaintiff's claim of retaliatory discharge, or that the allegedly illegal nature of its defense somehow relieves plaintiff of his burden of establishing the elements of his cause of action. Other remedies may exist for the other violation, but the burden still rests on plaintiff to prove the elements of the action he has pleaded.

Alternatively, plaintiff argues that he should be allowed to inform the jury that the defendant's proffered explanation for the discharge was a violation of Illinois law. We disagree.

As noted above, evidence of the alleged violation of the Wage Act was not relevant to plaintiff's cause of action, which was based on an entirely different theory–that plaintiff was discharged in retaliation for filing a workers' compensation claim. Moreover, it is clear from the record that, at the time of the plaintiff's discharge, defendant did not know that it might be in violation of the Wage Act. It was only when Fillingham was questioned as an adverse witness at trial and was shown the text of the Wage Act that she learned that defendant's discharge of the plaintiff might possibly constitute a violation of that statute. On this record, evidence of the alleged violation of the Wage Act could not even have been used to impeach the witness' credibility, assuming that such impeachment would ever be proper.

While plaintiff remained free to argue to the jury that the reason given by defendant for plaintiff's discharge was pretextual and that defendant actually fired plaintiff for having filed a workers' compensation claim, plaintiff could not attempt to put forth what was in essence a new and separate cause of action, or impeach the defendant with a violation of a statute of which the defendant was unaware.

For these reasons, we believe that the trial court erred in allowing plaintiff to submit evidence of defendant's alleged violation of the Wage Act and instructing the jury on that matter. Moreover, the introduction of this evidence and the use of the instructions were clearly prejudicial to defendant, and we agree with the appellate court that a new trial is necessary in this case.

B. Three-tier Approach

Plaintiff next argues that the three-tier allocation of proof standard applied by federal courts to employment discrimination cases brought under Title VII of the Civil Rights Act of 1964 should be used in retaliatory discharge cases. Under this approach to a retaliatory discharge claim, once a plaintiff establishes a 
prima facie
 case against the defendant, the defendant has the burden of rebutting the 
prima facie
 case with evidence of a legitimate, nonretaliatory reason for discharging the plaintiff. If the defendant meets this burden, the plaintiff must then prove that the nonretaliatory reason asserted by the employer is pretextual. 
McDonnell Douglas Corp. v. Green
, 411 U.S. 792, 802-04, 36 L. Ed. 2d 668, 677-79, 93 S. Ct. 1817, 1824-25 (1973).

In 
Kelsay v. Motorola, Inc.
, 74 Ill. 2d 172 (1978), this court first recognized a retaliatory discharge cause of action. The action represents an exception to the general rule that “at-will” employment is terminable at any time for any or no cause. 
Palmateer v. International Harvester Co.
, 85 Ill. 2d 124, 128, (1981). Despite the “revolutionizing effect” of 
Kelsay
 (
Hartlein
, 151 Ill. 2d at 159), the common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason remains the law in Illinois. See 
Fellhauer v. City of Geneva
, 142 Ill. 2d 495 (1991). We do not believe there is anything unique about the tort of retaliatory discharge that requires a deviation from the traditional tort law approach to the allocation of proof. Cases brought for retaliatory discharge based on an employee's filing of a workers' compensation claim should be reviewed using traditional tort analysis. See 
Netzel v. United Parcel Service, Inc.
, 181 Ill. App. 3d 808, 812 (1989). We believe a contrary holding would, in essence, expand the tort of retaliatory discharge by reducing plaintiff's burden of proving the elements of the tort. Because we refuse to expand the tort of retaliatory discharge, we decline plaintiff's invitation to adopt the three-tier allocation of proof method in retaliatory discharge cases.

III. CONCLUSION

For the foregoing reasons, the judgment of the appellate court, which reversed the judgment of the circuit court of McLean County, is affirmed.

Affirmed.

JUSTICE HEIPLE, dissenting:

Plaintiff was discharged from his employment with defendant after he filed a claim for workers' compensation. He subsequently brought suit against defendant for retaliatory discharge. At trial, defendant contended that plaintiff was not fired for filing a workers' compensation claim. Rather, he was fired for demanding that he be paid on a date sooner than that dictated by company policy. The trial court allowed plaintiff to introduce evidence that the payroll policy violated the Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/4 (West 1994) (providing that “[a]ll wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned”)). The trial court also gave the jury an instruction explaining the requirements of the Wage Act. The jury returned a verdict for plaintiff. In a split decision, the appellate court reversed.

The majority here holds that the jury's verdict must be reversed because evidence concerning the Wage Act was irrelevant to plaintiff's cause of action. This is incorrect.

The gist of the employer's defense is that plaintiff was fired for improperly demanding premature payment of wages prior to August 11, 1989, for work which plaintiff performed on July 28 and 29, 1989. In that connection, the trial court permitted plaintiff to introduce evidence that defendant would have violated the Wage Act if it had in fact waited until August 11 to pay plaintiff for this work.

The majority contends that this evidence concerning the Wage Act was irrelevant to plaintiff's allegation that he was discharged for filing a workers' compensation claim. To the contrary, evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. 
People v. Gonzalez
, 142 Ill. 2d 481, 487-88 (1991). As the majority notes, in an action for retaliatory discharge, the defendant/employer may choose to argue that it discharged the plaintiff for a reason other than that alleged in the complaint. Slip op. at 5. As the majority also notes, however, in order to be successful in such a defense, the defendant must convince the trier of fact that its proffered reason for discharge is “nonpretextual.” Slip op. at 5.

The fact that defendant would have violated the Wage Act by refusing to pay plaintiff before August 11 makes it more likely that defendant's proffered reason for discharge was pretextual. The majority nevertheless contends that evidence of a potential Wage Act violation was irrelevant to the issue of pretext because, at the time of the dispute, defendant claims it was unaware that its chosen method of payment violated the Act. Whether defendant was in fact aware of this violation and the significance of any such awareness, however, are questions of fact committed to the jury's determination. The majority's resolution of these questions in a manner contrary to the verdict illegitimately usurps the jury's function.

Accordingly, I would reverse the decision of the appellate court and affirm the judgment entered by the circuit court.

JUSTICES HARRISON and NICKELS join in this dissent.