In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2572

VALA BORCKY,

Plaintiff-Appellant,

v.

MAYTAG CORPORATION, doing business
as Maytag, Herrin Laundry Products,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 C 4040--J. Phil Gilbert, Judge.

Argued January 25, 2001--Decided April 26, 2001

Before COFFEY, RIPPLE and DIANE P. WOOD, Circuit
Judges.

RIPPLE, Circuit Judge.  Vala Borcky brought this
action against her former employer, Maytag
Corporation ("Maytag"). She alleged that Maytag
discharged her in retaliation for exercising her
rights under the Illinois Workers' Compensation
Act. The district court granted Maytag's motion
for summary judgment, and Ms. Borcky appealed.
For the reasons set forth in the following
opinion, we affirm the judgment of the district
court.

I
BACKGROUND
A.  Facts/1

  Ms. Borcky was an employee of Maytag from
October 2, 1979, until January 5, 1998. Her
employment relationship with Maytag was governed
by the Collective Bargaining Agreement ("CBA")
between Maytag and the International Association
of Machinists and Aerospace Workers.
  The CBA contained an absentee policy that
allowed Maytag, under certain circumstances, to
assess points against union employees who were
absent from work. The policy specifically
provided that, when an employee was absent due to
personal illness and provided an acceptable

medical excuse, the employee would be assessed .5 points for each occurrence./2 If the employee was absent and failed to provide an acceptable medical excuse, the employee would be assessed 2 points for each absence. No points were assessed for medical absences due to a reported occupational injury. An employee became subject to progressive discipline when he or she reached 6 points within a six-month period. According to the progressive discipline schedule, any employee who accumulated 15 points within a six-month period would be discharged.

The parties dispute the number of points that Ms. Borcky accrued in the six months preceding December 1997. However, Ms. Borcky seems to agree that she was properly assessed at least 1.5 points for absences in October and November 1997./3 In addition to her absences in October and November, Ms. Borcky was absent from December 1 through December 5, 1997; she was not assessed any points, however, because the absences were due to an earlier, work-related injury. Ms. Borcky was again absent from work on December 8 through December 12 and December 15 through December 16, 1997, due to bronchitis.

Maytag also mistakenly believed that Ms. Borcky was absent on December 17 through 19 and that she had not called in to report her absences. Consequently, Maytag terminated her employment pursuant to CBA sec. 13.3f, which treats two consecutive days of "No Report" absences as a "Quit without notice." R.21, Ex.A at 19. Upon receiving her termination letter, Ms. Borcky brought the error to Maytag's attention, and she was reinstated.

Shortly thereafter, Ms. Borcky provided Maytag with a doctor's note to cover her absences from December 8 through 16. According to the note, Ms. Borcky contacted Dr. Mark Smith's office on December 8, 1997, "saying she had [b]ronchitis and wanted antibiotics refilled[.] She was not seen in the office[.]" R.21, Ex.B. Maytag found the excuse unacceptable because the doctor's note did not state that Ms. Borcky was unable to work during her absence and because it did not corroborate Ms. Borcky's contention that she did, in fact, have bronchitis. Consequently, Ms. Borcky was assessed 14 points (2 points per day) for her December absences. Combined with her points from October and November, Ms. Borcky exceeded 15 points; as a result, Ms. Borcky was discharged on January 5, 1998./4

Following her discharge, Ms. Borcky again provided Maytag with a note from her doctor. This second note from Dr. Smith, dated January 6, 1998, stated:

[Ms. Borcky] was seen in [our] office 11/13/97 and 12/4/97 and diagnosed and treated for bronchitis. She called the office 12/8/97 and stated she had a reoccurrence of [b]ronchitis. Medications were called in. Based on her previous and recent episodes of [b]ronchitis, I have no reason to doubt that she was ill 12-8 – 12-16-97.

R.21, Ex.C. However, like the first excuse, the note did not state that Dr. Smith had examined Ms. Borcky or state conclusively that Ms. Borcky was unable to work during her absence. Maytag's termination decision, therefore, remained unchanged.

B.   District Court Proceedings

Ms. Borcky brought this cause of action in the Circuit Court of Williamson County, Illinois, on January 6, 1999. In her original complaint, Ms. Borcky alleged that Maytag discharged her in retaliation for exercising her rights under the Illinois Workers' Compensation Act in violation of 820 ILCS 305/4(h), that it had violated the CBA, and that it intentionally had caused her emotional distress. Based on diversity of citizenship and, with respect to count two, federal question jurisdiction, Maytag removed the case to district court.

Maytag then filed its motion for summary judgment. Before a ruling on the motion, however, counts two and three of Ms. Borcky's complaint were voluntarily dismissed. Consequently, the only remaining count before the district court was Ms. Borcky's retaliatory discharge claim. With respect to that claim, Maytag maintained that Ms. Borcky could not establish a necessary element of her cause of action: a causal connection between her workers' compensation claim and her termination. According to Maytag, the only allegation in Ms. Borcky's complaint to support this element was that she unjustifiably was assessed points for her December absences. However, explained Maytag, it had followed its usual procedure under the CBA for requiring a valid physician's note for any absences. Maytag asserted that the doctor's notes that Ms. Borcky presented upon her return to work in late December and upon her termination in January did not indicate that she was unable to work from December 8 through December 16, 1997. Because Ms. Borcky was unable to show that she was erroneously assessed 14 points for these days, Maytag contended, she accrued over 15 points within a six-month period and was, therefore, subject to termination under the CBA.

In her opposition memorandum and affidavit, Ms.

Borcky argued that Maytag's reason for terminating her employment should not be believed. She pointed to alleged errors in Maytag's attendance records as well as Maytag's prior, but rescinded, termination of her employment as evidence of a retaliatory motive. Ms. Borcky also maintained that her absences in December should have been excused because her doctor's note of January 6, 1998, was sufficient to meet her obligations under the CBA.

On February 10, 2000, the district court ordered that the parties file a joint statement of uncontested facts by May 19, 2000, pursuant to a local rule. However, on May 17, 2000, before the joint statement of facts was filed, the district court granted Maytag's motion for summary judgment. The district court held that Ms. Borcky was unable to prove that her discharge was causally related to her filing a claim under the Illinois Workers' Compensation Act. The district court stated that, even construing the evidence in a light most favorable to Ms. Borcky, she had provided nothing except her own unfounded allegations in support of her claim that Maytag had discharged her in retaliation for her workers' compensation claim. The district court therefore granted Maytag's motion for summary judgment. This appeal followed.

II
DISCUSSION
A.

We review de novo the district court's grant of summary judgment to Maytag. See Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999). In evaluating the district court's decision, we "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." Bellaver v. Quanex Corp., 200 F.3d 485, 491-92 (7th Cir. 2000). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

However, "[t]he mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment," Liu v. T & H Mach., Inc., 191 F.3d 790, 796 (7th Cir. 1999); only a "genuine" issue of "material" fact precludes summary judgment, Fed. R. Civ. P. 56(c). "Factual disputes are 'material' only when they 'might affect the outcome of the suit under the governing law.'" Oest v. Illinois Dep't of Corrections, 240 F.3d 605, 610 (7th Cir. 2001)

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Furthermore, "[f]actual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [nonmovant].'" Id. (quoting Liberty Lobby, 477 U.S. at 248). Speculation will not suffice. See Liu, 191 F.3d at 796 ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion."); Amadio v. Ford Motor Co., 238 F.3d 919, 927 (7th Cir. 2001); Gorbitz v. Corvilla, Inc., 196 F.3d 879, 882 (7th Cir. 1999) (stating that a plaintiff's speculation is "not a sufficient defense to a summary judgment motion"). With these principles in mind, we turn to Ms. Borcky's claim.

The Illinois Workers' Compensation Act makes it unlawful for an employer to retaliate against employees for exercising their rights or remedies granted by the Act. See 820 ILCS 305/4(h). Illinois has recognized an independent cause of action for retaliatory discharge for employees whose employment is terminated as a result of their exercise of rights under the statute, including the right to file a workers' compensation claim. See Kelsay v. Motorola, Inc., 384 N.E.2d 353, 357 (Ill. 1978). To recover damages for this tort, "an employee must prove: (1) that [she] was an employee before the injury; (2) that [she] exercised a right granted by [the Illinois] Workers' Compensation Act; and (3) that [she] was discharged and that the discharge was causally related to [her] filing a claim under the Workers' Compensation Act." Clemons v. Mechanical Devices Co., 704 N.E.2d 403, 406 (Ill. 1998)./5

Here, the district court determined that Ms. Borcky had provided no evidence, except for her own unsupported allegations and conclusions, linking her discharge to her workers' compensation claim. Ms. Borcky, however, maintains that there are issues of fact concerning Maytag's motivation in terminating her employment. She points to three facts that, she claims, if taken as true, would preclude summary judgment: (1) that Maytag assessed points for absences related to her occupational injury; (2) that Maytag initially terminated her employment on December 23, 1997; and (3) that Maytag rejected her doctor's excuse as inadequate. We address each of these in turn.

Ms. Borcky first contends that Maytag's assessment of points for absences related to her occupational injury evidences Maytag's real motive for her discharge: her workers' compensation claim. Specifically, in her affidavit in opposition to Maytag's motion for

summary judgment, Ms. Borcky identifies five absences in September through November of 1997 that, she claims, resulted from her occupational injury and for which Maytag assessed her points. We do not believe that these errors suggest a retaliatory motive on Maytag's part. Ms. Borcky had twenty-eight absences during the months of September through December 1997 (excluding vacations and holidays). During this time frame, there were ten absences attributed to Ms. Borcky's occupational injury and for which Maytag did not assess points. Therefore, there is no basis from which a factfinder could conclude that Maytag was unwilling to excuse Ms. Borcky's properly documented absences due to her occupational injury. Additionally, even if these absences and the resulting points were omitted from her point total, Ms. Borcky still would have reached 15 points--the level at which Maytag could terminate employment under the CBA. Consequently, any dispute regarding Maytag's assessment of points for these absences is not probative of the causation issue, is therefore not material, and does not preclude summary judgment.

Ms. Borcky also points to Maytag's termination of her employment on December 23 as evidence of its unlawful motive. Again, we perceive nothing in Maytag's application of the provisions of the CBA, albeit mistaken, that suggests Maytag's motivation for terminating Ms. Borcky was in retaliation for her filing a workers' compensation complaint. When Ms. Borcky brought the mistake to Maytag's attention, she was immediately reinstated and given the opportunity to provide a physician's excuse for her absences on December 8 through 16, 1997. The fact of Ms. Borcky's prior mistaken discharge simply is not probative of, or "material" to, the issue of causation.

Finally, Ms. Borcky argues that Maytag's refusal to accept her physician's note suggests an improper motive in Maytag's decision to terminate her employment. In her affidavit in opposition to Maytag's motion for summary judgment, Ms. Borcky states that she "ha[s] reason to believe that other employees have presented doctor's slips which are like or similar to that of which [she] presented on 12/23/97 and which were found acceptable." R.24, Ex.B at 2-3. However, "[a] party must present more than mere speculation or conjecture to defeat a summary judgment motion." Liu, 191 F.3d at 796. Ms. Borcky has not come forward with anything, beyond her own surmises, to show that Maytag has accepted doctor's slips similar to the ones she presented to Maytag on December 23, 1997, and January 6, 1998. In the absence of such evidence, we shall not impute a

retaliatory motive to Maytag for requiring a physician to examine an employee and corroborate the employee's need to be absent. Ms. Borcky's speculation that Maytag applied its standard inconsistently, without more, does not create a "genuine" issue of material fact that precludes summary judgment./6

B.

   Ms. Borcky also maintains that the district court's grant of summary judgment was premature because the parties had not submitted a joint statement of undisputed facts, as required by a local rule, when the court ruled on Maytag's motion for summary judgment. We review a district court's application of a local rule for an abuse of discretion. See Little v. Cox's Supermarkets, 71 F.3d 637, 640 (7th Cir. 1995) ("[I]t is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion.").

   Rule 7.1(h) for the Southern District of Illinois states:

In any case in which all parties are represented by counsel, any motion packet filed pursuant to Federal Rule of Civil Procedure 56 shall include a separate, concise, joint statement signed by all parties setting forth the uncontested material facts. All material facts set forth in the joint statement will be deemed admitted. Any contested facts shall be set forth with specificity and with reference to admissible evidence in a separate concise statement. The motion for summary judgment may be denied if the movant fails to include the statement of material facts in accordance with this Rule.
U.S. Dist. Ct., S.D. Ill., R. 7.1(h). Rule 7.1 is an organizational tool for the district court to identify quickly those facts that are agreed upon and those that are not. It does not confer upon the parties an absolute right to provide such a statement to the court; indeed, its language concerning the district court's right to insist upon such a statement is permissive: "The motion may be denied . . . ." Id. (emphasis added).

   Here, although the court ordered the parties to submit such a statement, it apparently determined that it could rule on the motion for summary judgment in the absence of this submission. The materials offered in support and in opposition to the motion for summary judgment were not voluminous, and the issues were not complex. Ms. Borcky can point to no specific unfairness due to the district court's decision to act without further submissions from the parties. Moreover, there is no suggestion in the record that the

district court mistook disputed facts for undisputed facts or construed facts in Maytag's favor. By contrast, the district court stated that it construed the facts in the light most favorable to Ms. Borcky, but simply concluded that Ms. Borcky failed to come forward with evidence that created a genuine issue of material fact. In the absence of some evidence that the district court was confused by the submissions or misapplied the standard, we shall not second-guess its decision to proceed without a Rule 7.1 statement.

## Conclusion

Ms. Borcky has not identified a genuine issue of material fact that precludes summary judgment. Similarly, she has not established that the district court abused its discretion in ruling on the motion for summary judgment in the absence of a statement of undisputed facts. The judgment of the district court, therefore, is affirmed.

AFFIRMED

/1 Because the district court granted summary judgment to Maytag, we must construe the record in the light most favorable to Ms. Borcky. See Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

/2 It is unclear from the parties' briefs whether "occurrence" refers to each day of absence or to each incidence of illness regardless of the number of consecutive days of absence. The language of the CBA suggests the latter interpretation is the correct one. See R.21, Ex.A at 17. Furthermore, because we must view the facts in the light most favorable to Ms. Borcky, and because this interpretation favors Ms. Borcky, we employ this definition.

/3 It is not clear from the record exactly how many points Ms. Borcky believes that she should have been assessed in the months of October and November. The information supplied by Ms. Borcky to Maytag by way of discovery responses differed from her deposition testimony, which also differed from her affidavit in opposition to Maytag's motion for summary judgment. In response to a discovery request, Ms. Borcky identified four absences in November that were unrelated to her occupational injury and for which she had a doctor's excuse (November 13-14 and November 18-19). Assessing .5 points per occurrence, Ms. Borcky should have been assessed at least one point in November. See R.21, Ex.G. However, in her deposition, Ms. Borcky first stated that

"every single point" she was assessed in the six months prior to her termination was inappropriate. R.21, Ex.E at 47. She then immediately corrected herself and stated, "Well, there are three and a half I earned." Id. However, with the exception of .5 points that were assessed for an absence on October 6, 1997, Ms. Borcky could not identify with any precision how she arrived at her figure. See id. at 47-50. Later, in her affidavit in opposition to Maytag's motion for summary judgment, Ms. Borcky took issue with the calendar of absences presented by Maytag in support of its motion. Specifically, Ms. Borcky stated that September 5, October 9, 20 and 28, and November 2, 1997, were all absences related to her occupational injury and for which she should not have been assessed any points. In that same affidavit, however, she did not contest the points assessed for October 6 (.5), November 13 (.5) or November 18 (2), for a total of 3 points. Therefore, reading all of Ms. Borcky's submissions in the light most favorable to her position, she was properly assessed at least 1.5 points, .5 points for the October 6 absence and 1 point (.5 per occurrence) for her November absences.

/4 Ms. Borcky was given the option of seeking a retroactive leave of absence that, according to the CBA, would have completely excused her absences. She did not pursue this option.

/5 Under Illinois law, the burden of proving the elements of the cause of action remains with the plaintiff at all times. See Clemons, 704 N.E.2d at 406. The employer may come forward with a reason for the discharge, but it is not required to do so. See id. However, there is some question whether the burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), should apply to state discrimination and retaliation causes of action that are litigated in federal court. See Bourbon v. Kmart Corp., 223 F.3d 469, 473 (7th Cir. 2000). For the reasons set forth later in this opinion, we need not choose between these methods in the present action.

/6 The same result obtains if we were to apply the McDonnell Douglas analysis. As referenced earlier, a recent decision of this court applied the McDonnell Douglas burden-shifting test to a state retaliatory discharge case brought in federal court. See Bourbon, 223 F.3d at 473. Under McDonnell Douglas, once a plaintiff establishes a prima facie case of discrimination, the defendant has the burden of coming forward with a legitimate, non-discriminatory reason for discharging the plaintiff. See id. at 473; see also McDonnell Douglas, 411 U.S. at 802. If the

defendant meets this burden, the plaintiff must show that the legitimate, non-discriminatory reason asserted by the employer is pretextual. See Bourbon, 223 F.3d at 473; see also McDonnell Douglas, 411 U.S. at 804.

Here, we need not choose between the available analytical constructs (leaving the burden of proof on the plaintiff or shifting it between the parties) because Ms. Borcky's claim fails under either method. Even if Ms. Borcky were able to make a prima facie case of retaliation, she has not come forward with any evidence that Maytag's legitimate, non-discriminatory reason (reaching 15 points under the CBA) was pretextual.