In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2199

JEFF PHILLIPS,

*Plaintiff-Appellant,*

*v.*

CONTINENTAL TIRE THE AMERICAS, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:12-cv-00307-JPG-SCW — **J. Phil Gilbert**, *Judge.*

ARGUED DECEMBER 5, 2013 — DECIDED FEBRUARY 14, 2014

Before WOOD, *Chief Judge,* and SYKES and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Continental Tire The Americas, LLC (CTA) terminated Jeff Phillips's employment after he refused to take a drug test upon his initiation of a workers' compensation claim. Phillips sued, alleging that CTA retaliated against him for seeking workers' compensation benefits in violation of Illinois law. The district court granted CTA's

motion for summary judgment, and Phillips appealed. For the reasons that follow, we affirm.

## I.    Background

CTA has a tire manufacturing facility in Mt. Vernon, Illinois. Phillips worked there as a passenger general trucker for twenty-two years until his discharge. The Mt. Vernon facility has a health services department that provides medical treatment to sick or injured employees. In April 2010, Phillips visited the health services department to report that his fingers went numb at work and to initiate a workers' compensation claim. At the time, CTA had a written substance abuse policy that required drug testing in certain situations: 1. Pre-employment testing; 2. Random testing for initial 12 months of employment; 3. For-cause testing; 4. OSHA recordable accident; 5. Transportable injury; 6. Serious equipment/property personal damage incident; and 7. Initiation of workers' compensation claim. The policy provided that "[r]efusal to submit to testing will be cause for immediate suspension pending termination." An injured employee could receive medical treatment in the health services department and return to work without being required to submit to a drug test if (a) the employee did not seek to initiate a workers' compensation claim; and (b) the situation did not fall into one of the other categories for which drug testing was required under company policy. But an employee who sought to initiate a workers' compensation claim was required to submit to drug testing or be immediately suspended pending termination, regardless of whether he received treatment or services at the health services department.

Phillips was informed that he had to submit to a drug test before he could initiate a workers' compensation claim and he was shown the CTA drug testing policy. He also was advised that if he didn't take the drug test, his employment would be terminated. Nonetheless, he refused to take the drug test because he didn't think that it should be a necessary consequence of filing a workers' compensation claim.

Phillips was terminated from his employment with CTA for refusing to submit to drug testing upon his initiation of a workers' compensation claim. CTA's discharge letter states: "As a result of your refusal to perform the required drug test on April 21, 2010, this letter is serving as notification that your employment is being terminated immediately for violation of Company policy," in particular a "violation of the company's substance abuse policy." When asked at his deposition why CTA terminated him, Phillips stated, "Because I didn't submit to a drug test." And when asked if he was contending that CTA fired him because he filed a workers' compensation claim, he answered, "They fired me because I didn't submit to a drug test." Phillips agreed that he had no evidence or information that there was a different reason for his discharge. It is his understanding that he would still be employed at CTA if he had taken the drug test. Even though he refused to submit to the test, Phillips did file a workers' compensation claim. At oral argument CTA's counsel advised the court that Phillips eventually received workers' compensation benefits.

## II.   Discussion

We review the district court's summary judgment ruling *de novo*, construing the evidence and drawing reasonable inferences in favor of the party against whom the motion was

made. *Beatty v. Olin Corp.*, 693 F.3d 750, 752 (7th Cir. 2012). Illinois law recognizes a "cause of action for retaliatory discharge where an employee is terminated because of his actual or anticipated exercise of workers' compensation rights." *Id.* at 753. To establish a retaliatory discharge claim, a plaintiff must prove: "(1) that he was an employee before the injury; (2) that he exercised a right granted by the Workers' Compensation Act; and (3) that he was discharged and that the discharge was causally related to his [pursuit of] a claim under the Workers' Compensation Act." *Id.* (quoting *Clemons v. Mechanical Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998)). The only issue in this case is causation.

Causation "requires more than a discharge in connection with filing a claim." *Marin v. Am. Meat Packing Co.*, 562 N.E.2d 282, 286 (Ill. App. Ct. 1990) (citation omitted). The "ultimate issue" regarding causation is "the employer's motive in discharging the employee." *Beatty*, 693 N.E.2d at 753 (quoting *Clemons,* 704 N.E.2d at 406); *see also Brooks v. Pactiv Corp.*, 729 F.3d 758, 768 (7th Cir. 2013) ("[T]he employer … may … be liable for retaliatory discharge if the actual motivation for the termination was the employee's pursuit of a workers' compensation claim."). To establish causation, the employee "must affirmatively show that the discharge was primarily in retaliation for [his] exercise of a protected right." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012) (quotation and citation omitted).

Phillips did not make this showing. The undisputed facts—including the parties' stipulation and Phillips's own deposition testimony—establish that CTA terminated Phillips because he refused to take a drug test upon initiation of a workers' compensation claim as required by CTA policy.

Phillips has admitted that he had no evidence or other information that CTA had any other reason for discharging him. CTA consistently has applied its drug testing policy and has discharged other employees who have refused to submit to the drug test pursuant to the policy. Therefore, Phillips cannot establish that his discharge was motivated by his pursuit of a workers' compensation claim and he cannot prevail on his retaliatory discharge claim.

Furthermore, other CTA employees have initiated workers' compensation claims and have not been discharged. Indeed, Phillips had filed a workers' compensation claim in the past and was not discharged. In addition, Phillips did initiate a workers' compensation claim regarding his April 2010 injury, and he agreed that if he had taken the drug test, he would still be employed at CTA. We are unable to square these facts with the claim of retaliatory discharge.

Phillips argues that his discharge was "causally related" to his initiation of his claim under the Workers' Compensation Act and relies on *Clark v. Owens-Brockway Glass Container, Inc.*, 697 N.E.2d 743 (Ill. App. Ct. 1998), which states: "An employer may discharge an injured employee who has filed a workers' compensation claim as long as the reason for the discharge is *wholly unrelated* to the employee's claim for benefits under the Workers' Compensation Act." *Id.* at 746 (emphasis added). That misstates the law. "But-for" causation is not sufficient to establish retaliatory discharge. *See, e.g.*, *Clemons.*, 704 N.E.2d at 407–08; *see also Casanova v. Am. Airlines, Inc.*, 616 F.3d 695, 698 (7th Cir. 2010) (observing that *Clemons* "rejected an argument that but-for causation is enough to establish retaliatory discharge" and that *Grabs v. Safeway, Inc.*, 917 N.E.2d 122 (Ill. App. Ct. 2009), and *Finnerty*

*v. Personnel Board*, 707 N.E.2d 600 (Ill. App. Ct. 1999), "like *Clemons* reject the argument that a fired worker can establish causation by showing that a workers' compensation claim set in motion a chain of events that ended in discharge"); *Marin,* 562 N.E.2d at 286 (stating that the causal element "requires more than a discharge in connection with filing a claim"). The initiation of a workers' compensation claim "was a necessary condition of [Phillips's] discharge. But it was not a sufficient condition." *See Casanova*, 616 F.3d at 697. *Clark* is unhelpful to Phillips for another reason: the employer in that case discharged the employee because it thought her claim for benefits was exaggerated and admitted that the discharge was connected to the workers' compensation claim. There is no such evidence in Phillips's case.

Phillips asserts that the district court erred in relying on a provision of the Illinois Workers' Compensation Act, 820 ILCS 305/11, not in effect at the time of his injury. (This provision establishes a rebuttable presumption that the employee was intoxicated and that the intoxication was the proximate cause of the employee's injury if the employee refuses to submit to drug or alcohol testing.) Although the court referred to this provision, its grant of summary judgment to CTA was not premised upon it. Rather, the court mentioned the provision only after it determined that Phillips had not suggested CTA had an improper motive in terminating him and that he agreed he was terminated pursuant to the drug testing policy. The court cited the provision as a response to Phillips's argument that the drug testing policy discourages employees from filing workers' compensation claims; the court simply referred to the provision as support for its conclusion that there were valid reasons for requiring drug testing upon the initiation of a workers' compensation claim.

The enactment of such a provision certainly reflects that an employer is not out of step with Illinois public policy by requiring drug testing under certain circumstances. Moreover, any alleged error caused by the district court's reference to a statutory provision not in effect at the time of Phillips's discharge does not undercut the correct determination that Phillips failed to show his discharge was caused by the initiation of a workers' compensation claim.

Although Phillips argues that the drug testing policy discourages employees from filing workers' compensation claims, he could not identify anyone who had been discouraged from filing a claim because of the policy. (And he was not discouraged from filing a claim.) As the district court acknowledged, this discouragement argument is in tension with the current version of Workers' Compensation Act, which expressly contemplates drug and alcohol testing in connection with workers' compensation claims. *See* 820 ILCS 305/11. Furthermore, drug testing in employment is not against Illinois public policy. For instance, the recently enacted Compassionate Use of Medical Cannabis Pilot Program Act provides that "[n]othing in this Act shall prohibit an employer from enforcing a policy concerning drug testing … provided the policy is applied in a nondiscriminatory manner." 410 ILCS 130/50(b) (effective Jan. 1, 2014). And the Illinois Human Rights Act provides that "[i]t shall not be a violation of this Act for an employer to adopt or administer reasonable policies …, including … drug testing, designed to ensure that an individual described in [the Act] is no longer engaging in the illegal use of drugs." 775 ILCS 5/2-104(C).

According to Phillips, CTA's drug testing policy treats similarly situated injured employees differently based solely

on whether they seek to initiate a workers' compensation claim. He argues that CTA cannot justify this disparate treatment. Yet the drug testing policy covers many other situations in which CTA faces potential legal exposure; the policy does not single out workers' compensation claimants for testing. For example, testing is required if an OSHA recordable accident occurs or if there is a serious equipment/property/personal damage incident. With the drug testing, CTA seeks evidence for the workers' compensation proceeding, *cf. Parro v. Indus. Comm'n*, 657 N.E.2d 882, 885 (Ill. 1995) (relying on blood alcohol testing of claimant following injury to defeat workers' compensation claim)— evidence that would be unnecessary where the injured employee merely seeks treatment or services at the health services department. This seems to be a sound reason for differential treatment.

In conclusion, Phillips's employment with CTA was terminated because of his refusal to take the mandatory drug test—not in retaliation for his seeking to file a workers' compensation claim. We therefore AFFIRM the district court's judgment.