2022 IL App (1st) 210183-U
No. 1-21-0183
Order filed January 31, 2022

First Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JOHN M. REGALADO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 L 64016 |
| | ) | |
| ARNOLD RANDALL, FOREST PRESERVE DISTRICT | ) | |
| OF COOK COUNTY and COOK COUNTY, ILLINOIS, | ) | Honorable |
| | ) | Cheryl D. Ingram, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Holding*: Trial court did not err in granting summary judgment where plaintiff could not establish causation, a necessary element of his Whistleblower Act and retaliatory discharge claims, but the trial court should have granted his motion to file a first amended complaint.

¶ 2    After six years with the Forest Preserve District of Cook County, John Regalado was fired. Regalado's superiors, including defendant Arnold Randall, claimed they terminated him because he did not get along with other department directors and engaged in non-work-related activity while on the job. But Regalado believed his termination stemmed from his protected whistleblower

activity, namely, informing the Cook County Inspector General that a co-worker made false statements in a sexual harassment investigation.

¶ 3    Regalado filed a three-count complaint against Randall, the District, and Cook County alleging (i) Illinois Whistleblower Act (740 ILCS 174/1 *et al.*) violations, (ii) retaliatory discharge, and (iii) intentional infliction of emotional distress. Defendants moved to dismiss. The trial court granted the motion as to the intentional infliction of emotional distress claim but denied it as to the other two counts. Following depositions, defendants filed a motion for summary judgment. Regalado responded by filing a motion to amend his complaint. The trial court granted defendants' summary judgment motion and denied Regalado's motion to amend.

¶ 4    Regalado contends the trial court (i) erred in granting summary judgment because questions of fact existed on the reasons for his termination; and (ii) abused its discretion in denying his motion to amend.

¶ 5    The trial court in granting summary judgment cited to the evidence showing defendants decided to terminate Regalado almost a week before his purported whistleblower activity, precluding him from establishing causation, a necessary element to both his claims. But, under the factors set forth in *Loyola Academy v. S & S Roof Maintenance*, 146 Ill. 2d 263, 273 (1992), Regalado should have been permitted to amend his complaint to add allegations to support his claim that defendants terminated him for engaging in protected whistleblower activity. So, we affirm the trial court's order granting summary judgment but reverse its decision to deny Regalado's motion to amend, and we remand for further proceedings.

¶ 6                          Background

¶ 7    In 2018, Regalado served as director of facilities and fleet management for the Forest Preserve District of Cook County, reporting to Arnold Randall, General Superintendent of the

District, and Eileen Figel, Deputy General Superintendent. According to their depositions, Figel and Randall began discussing terminating Regalado's employment earlier that year because he had problems working with other district directors and working outside the scope of his employment by setting up and tending to a chicken coop and a garden at the District's maintenance garage. Randall acknowledged that in March 2018, he signed Regalado's performance review scoring 3.1 out of 4 and indicating Regalado slightly exceeded expectations and but had temperament problems, stating that "please be thoughtful·about your tone so that your passion for the work and advocacy of your department do not come across as angry or antagonistic."

¶ 8     On July 30, 2018, Figel asked Randall's assistant to schedule a meeting for the next day with Figel, Randall, Dennis White, the District's Chief Attorney, and Michelle Gage, the District's Human Resources Director, to discuss Regalado's possible termination. The group met on July 31 and agreed the District should terminate Regalado and that Randall and Figel should meet with him as soon as possible to inform him of their decision.

¶ 9     On August 2, 2019, Randall's assistant sent a calendar invitation to Randall, Figel, and Regalado setting a meeting on August 6, 2018, at 3:30 p.m. to terminate Regalado. As scheduled, Randall and Figel met with Regalado, and informed him that the District was terminating his employment.

¶ 10     Regalado contends that the District fired him because of his whistleblower activities in connection with an alleged sexual harassment incident at the District warehouse where he worked. After receiving an anonymous tip, the District's chief attorney, White, opened an investigation into an alleged sexual harassment incident involving three employees. After a videotape of the alleged incident was discovered, White, referred the investigation to Cook County Office of

Independent Inspector General (OIIG). The OIIG investigated the incident and issued a report on May 25, 2018, recommending that two employees be terminated and the third be suspended.

¶ 11    After a June 22, 2018, pre-termination hearing, the District terminated both employees. Regalado claims he met with Randall on June 26 to discuss his concerns about the OIIG investigation, including his belief that representatives from the OIIG, the Legal Department, and Human Resources made numerous false statements at the June 22 hearing. He also produced a copy of a note he claims he gave to Randall, listing his concerns about the investigation and pre-termination hearings. Regalado contends he told Randall the employees should not be disciplined but that Randall told him to terminate them. (Later the employees were reinstated.)

¶ 12    Randall acknowledged Regalado raised concerns about the OIIG investigation but could not recall when or the specifics of the discussion. Nor could he recall receiving a document listing Regalado's concerns about the investigation.

¶ 13    On July 31, 2018, the OIIG issued a supplemental report, stating that Gloria Bonk, a District employee, told the OIIG investigator she saw several District employees watching the videotape of the alleged incident, and they showed her part of the video. She also said she told Regalado and other District employees about seeing the video. Regalado claims this is untrue and that Bonk never told him or the other employees that she had seen a video of the incident.

¶ 14    On the morning of August 6, 2018, before Regalado met with Randall and Figel, he sent an email to the Cook County Inspector General with three letter-affidavits signed by him and two other District employees. The letter-affidavits said that Bonk falsely stated in her OIIG interview that she had told them she had seen a video of the alleged sexual harassment incident. Regalado copied Randall on the email, and Randall forwarded it to Figel. In response, Figel wrote to Randall that the letter-affidavits did not change her mind about terminating Regalado. Randall agreed.

¶ 15    On July 15, 2019, Regalado filed a three-count complaint against Randall, the District, and Cook County alleging (i) violations of sections 15 and 20.1 of the Whistleblower Act, (ii) retaliatory discharge, and (iii) intentional infliction of emotional distress. Defendants moved to dismiss the complaint. (The trial court granted the motion as to intentional infliction of emotional distress.) Regalado contended the defendants violated the Whistleblower Act and engaged in retaliatory discharge under common law by firing him for sending the letter-affidavits to the OIIG alleging that Bonk lied in her interview with the OIIG.

¶ 16    On October 6, 2020, defendants filed a motion for summary judgment, arguing that Regalado cannot show causation between his sending the affidavits on the morning of August 6, 2018, and his termination later that day because the decision to terminate him was made a week earlier.

¶ 17    Less than a month later, Regalado's attorney filed an emergency motion for an extension of time to respond to the motion for summary judgment and for leave to withdraw as his attorney. The motion noted that Regalado and his attorney had "irreconcilable differences" regarding defendants' summary judgment motion and that Regalado wanted to seek new counsel. The trial court granted the motion

¶ 18    On December 22, 2020, Regalado's new counsel filed a response to the defendants' motion for summary judgment along with a motion for leave to amend his complaint. In his response, Regalado asserted that the August 6 letter-affidavits were only one part of a continuing process of protected activity that began on June 26, when he expressed his concerns about the OIIG investigation to Randall before defendants had decided to terminate him. Regalado attached several exhibits, including an affidavit stating he met with Randall on June 26 and a copy of notes he claimed he made before the meeting listing his concerns.

¶ 19    In reply, defendants asserted that Regalado did not mention the June 26 meeting in his complaint and that it was not newly discovered evidence justifying an amendment as he knew about the meeting when he filed his complaint. On January 26, 2021, the trial court entered an order granting defendants' motion for summary judgment and denying Regalado's motion to amend his complaint.

¶ 20                                      Analysis

¶ 21                               Summary Judgment

¶ 22    Summary judgment applies where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). The court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally for the non-movant. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* We review a grant of summary judgment *de novo*. *Id.*

¶ 23    In count I, Regalado alleged his discharge emanated from reporting to the OIIG that Bonk had made false statements to the OIIG investigator in violation of section 15 of the Whistleblower Act (740 ILCS 174/15(b) (West 2020)):

> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation. 740 ILCS 174/15 (West 2020).

¶ 24     Alternatively, Regalado contended his discharge violated section 20.1 of the Act: "Any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 ILCS 174/20.1 (West 2020).

¶ 25     In count II, Regalado raises a common law retaliatory discharge claim. To state a cause of action for retaliatory discharge, an employee must allege: (i) the employer discharged the employee, (ii) in retaliation for the employee's activities, and (3) the discharge violates a clear mandate of public policy. *Turner v. Memorial Medical Center*, 233 Ill, 2d 494, 500 (2009). The requirement that the discharge constitute retaliation for plaintiff's activities means the plaintiff must establish a causal relationship between the employee's activities and the discharge. *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill.2d 433, 443 (1994). When deciding the element of causation, the issue comes down to the employer's motive in discharging the employee. *Clemons v. Mechanical Devices Co.*, 184 Ill. 2d 328, 336 (1998).

¶ 26     Regalado contends a question of fact exists on the District's motive for terminating him and whether it was because he engaged in protected activity, which would preclude summary judgment on his claims. Specifically, Regalado contends his deposition testimony and the affidavit he submitted in response to the summary judgment motion show he complained to Randall before July 30, 2018. (On July 30, defendants decided to terminate Regalado.) According to Regalado, he told Randall at a June 26 meeting that the OIIG, the legal department, and the human resources department had obtained false statements to support terminating the employees. Moreover, he notes that two of the people he claims lied during the OIIG investigation, Michelle Gage, the

human resources director, and Dennis While, chief legal counsel, were at the July 31 meeting with Randall and Figel to discuss whether he should be terminated.

¶ 27 Defendants contend the trial court properly granted their motion for summary judgment because counts I and II allege his sending the letter-affidavits on the morning of August 6 precipitated his discharge, when the decision to terminate had already been made. Thus, they assert, Regalado cannot prove a causal connection between his protected activity and his termination, so they are entitled to judgment as a matter of law. Based on the allegations in Regalado's complaint, we agree.

¶ 28 Regalado's complaint alleged that the letter-affidavits to the OIIG sent on the morning of August 6, hours before his termination, led to the decision. But the record shows Randall met with Figel, White, and Gage a week earlier, on July 31, and the group agreed then on terminating Regalado. Both the Whistleblower Act and retaliatory discharge claims squarely revolve on his August 6 actions. Because defendants decided to terminate him before he sent the letter-affidavits, he cannot establish causation, and we affirm.

¶ 29                                        Motion to Amend Complaint

¶ 30 Regalado next contends the trial court abused its discretion in denying his motion to amend to add allegations about the June 22 pre-termination hearing and a June 26 meeting with Randall, where he claims he expressed his concerns about the investigation.

¶ 31 Section 2-616(a) provides, in relevant part, "[a]t any time before final judgment amendments may be allowed on just and reasonable terms *** changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or

assert a cross claim" 735 ILCS 5/2-616(a)(West 2020). Moreover, "[b]efore or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." 735 ILCS 5/2-1005(g) (West 2020).

¶ 32    A party does not have an absolute right to amend a pleading before final judgment, but Illinois has a liberal policy toward granting motions to amend. *Kay v, Prolix Packaging, Inc.*, 2013 IL App. (1st) 112455, ¶ 41. To determine abuse of discretion in denying leave to amend, we consider: (i) whether the proposed amendment cures a defect in the pleadings; (ii) whether the proposed amendment prejudices or surprises other parties; (iii) timeliness; and (iv) whether there were earlier opportunities to amend the pleadings. *Loyola Academy v. S & S Roof Maintenance*, 146 Ill. 2d 263, 273 (1992). Most important, however, is "'whether allowance of the amendment furthers the ends of justice.'" *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 41 (quoting *Trans World Airlines, Inc. v. Martin Automatic, Inc.*, 215 Ill. App. 3d 622, 628 (1991)). The decision to grant a party leave to amend its pleadings lies within the trial court's sound discretion, and we will affirm absent an abuse of discretion (*Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166).

¶ 33    As a preliminary matter, Regalado asserts that he was not seeking to add a new claim but to add facts already known to both parties. But, characterization of the amended complaint is not dispositive as a party may be allowed to change the cause of action or add new causes of action "any time before final judgment *** on just and reasonable terms." 735 ILCS 5/2-616(a)(West 2020).

¶ 34    Applying the *Loyola* factors, we conclude the trial court erred in denying Regalado's motion to amend his complaint. First, Regalado's proposed amendment cures his defective pleading, as it would defeat defendants' contention that he could not have been fired for his

whistleblower activity. Next, defendants would not be prejudiced or surprised by the amendment. Randall and Regalado were asked about the June 26 meeting at their depositions. In addition, Regalado disclosed a memorandum he wrote about the meeting during discovery. Third, the motion was timely, filed 18 months after Regalado's initial complaint and before the case was set for trial. See *Loyola Academy*, 146 Ill. 2d at 275 (motion timely when filed 17 months after initial complaint and before case set for trial).

¶ 35    Regarding the final *Loyola Academy* factor, Regalado's original counsel had withdrawn after filing an emergency motion to withdraw and extend the time for responding to defendants' motion for summary judgment. Notably, the trial court granted the emergency motion on November 10, 2020, shortly after the defendants filed their motion for summary judgment. After that, Regalado retained new counsel, who familiarized himself with the case, and filed the motion to amend with the response to the summary judgment within a month of filing his appearance. Under these facts and given Illinois's liberal policy toward amendment of complaints, allowing the amended complaint "furthers the ends of justice." Accordingly, we reverse the order denying Regalado's motion to amend.

¶ 36    Affirmed in part, reversed in part, and remanded for further proceedings.