In the

# United States Court of Appeals
## For the Seventh Circuit

————————

No. 07-1375

BRIAN K. DOTSON,

*Plaintiff-Appellant*,

*v.*

BRP US INCORPORATED, A Delaware
Corporation, formerly known as
BOMBARDIER MOTOR CORPORATION
OF AMERICA,

*Defendant-Appellee*.

————————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06 C 4004—**J. Phil Gilbert,** *Judge*.

————————

ARGUED NOVEMBER 26, 2007—DECIDED MARCH 21, 2008

————————

Before BAUER, ROVNER and WOOD, *Circuit Judges*.

ROVNER, *Circuit Judge*. Brian K. Dotson was terminated from his employment with BRP US Inc. ("BRP") after filing a claim for compensation under the Illinois Workers' Compensation Act ("WCA"). *See* 820 ILCS 305/1 *et seq*. Dotson's absence from work exceeded the amount of time allowed by the company's absenteeism policy, which tracks the time allotted by the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA"). Dotson sued

his employer under Illinois law, alleging that the discharge was in retaliation for filing a workers' compensation claim. The district court granted summary judgment in favor of BRP after concluding that no reasonable jury could conclude that Dotson's discharge was due to retaliation. We affirm.

## I.

BRP manufactures recreational products, including personal watercraft. Dotson began working for BRP in 1999 in a job called "grind and trim." Dotson's duties entailed drilling and cutting, sometimes in cramped spaces, under boats. On January 7, 2004, Dotson injured his back while grinding under a boat. He worked a few days on light duty status and then, at BRP's direction, he saw Dr. Dallas Lipscomb on January 19, 2004.[1] Dr. Lipscomb referred Dotson to Dr. McGuire, a chiropractor, and Dr. Kevin Rutz, an orthopedic spine specialist. Dotson saw Dr. Rutz on February 13 for an independent medical evaluation that had been requested by Gallgher Bassett Services ("Gallagher") on behalf of the workers' compensation carrier for BRP. Dr. Rutz performed surgery on Dotson's lower back in March, and gave him a limited duty work release at the end of June. Dr. Rutz released Dotson for full duty in August. From January 19 through the August work release, Dotson was unable to perform the grind and trim job due to his injury.

BRP's absenteeism policy tracked the minimum amount of leave mandated by the FMLA. The company allowed workers up to twelve weeks of unpaid leave in any rolling

---

[1]  All dates are in 2004 unless otherwise specified.

twelve-month period for qualifying absences. Translating that into hours, BRP allowed 480 hours of absence under the FMLA, and under its absenteeism policy. According to BRP's Employee Handbook,

> All FMLA time runs concurrent with short term disability and worker's compensation or any qualifying event. When an employee has exhausted twelve weeks of FMLA time during a rolling calendar year, employment with [BRP] may be terminated.

Although that passage implied that termination at the end of twelve weeks was optional, the very next sentence clarified the meaning:

> An employee who is unable to work for more than twelve weeks will be considered automatically terminated at the expiration of that period, regardless of the reason for the inability to work.

In both policy and practice, BRP terminated any employee who exceeded twelve weeks of FMLA leave in a twelve month period.

Prior to injuring his back, Dotson had already used 286 hours of FMLA leave during the previous twelve months. On January 19, BRP notified Dotson by letter that he might be eligible for FMLA leave due to his injury, that he had 194 hours (approximately 24 days) of FMLA leave remaining after other uses, and that any FMLA leave would run concurrently with workers' compensation and short term disability benefits. One BRP employee told Dotson his FMLA leave would expire on February 8, but a February 10 letter from BRP informed Dotson that his leave would expire on February 23 by the company's calculations. Dotson questioned whether he needed FMLA leave at all, believing that as long as his absence was

covered by workers' compensation, the time did not count against his FMLA total. BRP told Dotson that if he did not apply for FMLA leave, he would be terminated immediately, and so Dotson signed the paperwork, and then later tried to revoke his request. Dotson collected total temporary disability payments throughout his absence for this injury. Of course, as we noted above, Dotson's doctors performed his back surgery in March, and did not release him for full work duty until August. On February 24, BRP sent Dotson a letter purporting to terminate his employment due to excessive absenteeism.

Dotson sued BRP under the WCA, specifying three particular acts or omissions that harmed him. First, he alleged that BRP terminated his employment after he attempted to return to work with restrictions for a work-related injury.[2] Second, he complained that BRP wrongfully required him to utilize FMLA leave rather than affording him temporary total disability time as authorized by law. Finally, he asserted that BRP violated the WCA by wrongfully terminating him for exercising his lawful right to claim workers' compensation benefits. The district court granted summary judgment in favor of BRP, finding that Dotson failed to show a causal connection between his workers' compensation claim and his termina-

---

[2] The undisputed evidence shows that Dotson returned to work on light duty status for a few days following the injury. The light duty job involved walking at the plant. Walking hurt Dotson's back, and after he saw Dr. Lipscomb, Dotson stopped working in the light duty position. He has presented no evidence that BRP terminated him *because* he attempted to return on light duty status, and we will therefore not address this issue further.

tion. The court noted that excessive absenteeism, if not a pretext, is a valid basis for discharging an employee, even if the employee's absence is due to a work-related injury compensable under the WCA. Because Dotson presented no evidence that BRP's stated reason of excessive absenteeism was pretextual, the court found that Dotson could not demonstrate that the discharge was retaliatory. Dotson appeals.

## II.

On appeal, Dotson frames eight separate issues which boil down to a few distinct theories. According to Dotson, an employer may not lawfully "force" an employee to take FMLA leave, may not terminate an employee who is absent for a work-related injury, and may not count leave covered by workers' compensation toward the FMLA total. Dotson sees each of these actions by BRP as evidence that BRP discharged him in retaliation for exercising his rights to workers' compensation. However, all of Dotson's arguments are premised on misconceptions about workers' compensation, the FMLA, and retaliatory discharge.

Although some of Dotson's arguments allude to violations of the FMLA, Dotson's complaint was founded entirely on the Illinois tort of retaliatory discharge, and that is where we begin. To make out a claim for retaliatory discharge under Illinois law, an employee must demonstrate (1) that the employee has been discharged; (2) that the discharge was in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy. *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992). The Illinois Supreme Court determined

nearly thirty years ago that a discharge in retaliation for an employee's exercise of workers' compensation rights violated the public policy of the State. *See Kelsay v. Motorola, Inc.*, 384 N.E.2d 353 357-58 (Ill. 1978) ("[R]etaliatory discharge is offensive to the public policy of this State as stated in the Workmen's Compensation Act. This policy can only be effectively implemented and enforced by allowing a civil remedy for damages.").[3] To make out a claim for retaliation in the workers' compensation context, Dotson must show "(1) that he was the defendant's employee before his injury; (2) that he exercised a right granted by the Workers' Compensation Act; (3) and that he was discharged from his employment with a causal connection to his filing a workers' compensation claim." *McCoy v. Maytag Corp.*, 495 F.3d 515, 521 (7th Cir. 2007). *See also Carter v. Tennant Co.*, 383 F.3d 673, 677 (7th Cir. 2004). The only element of this formulation that is under dispute is the causal link between Dotson's exercise of his right to workers' compensation benefits and his termination. The burden is on the employee to demonstrate that the termination was motivated by an unlawful intent to retaliate against the employee for exercising a statutory right to workers' compensation benefits. *Feldman v. American Memorial Life Ins. Co.*, 196 F.3d 783, 792 (7th Cir. 1999). "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Hartlein*, 601 N.E.2d at 728. Thus, Illinois law does not require an employer to retain an at-will employee who is medically unable to perform the job. Nor is the employer

---

[3]   As of January 1, 1980, the WCA was retitled to use the gender-neutral term "workers" in place of "workmen."

obliged to reassign the employee to another position rather than terminate the employee. *Id*. Finally, and most importantly in this case, "an employer may fire an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury." *Id*.

Consonant with that final point, BRP contends that it terminated Dotson not because he sought workers' compensation benefits but rather because he exceeded his twelve-week allotment of leave under the company's policy for excessive absenteeism. BRP's policy, both in writing and in practice, was to terminate any worker who exceeded twelve weeks of FMLA leave. According to BRP, Dotson exhausted his twelve weeks by the end of February, having used more than half of the allotment for other purposes before this injury occurred. Because Dotson's physician did not release him to return to work until August, BRP argues that his discharge did not violate the law.

Dotson argues that this stated reason is pretextual and that he did not exhaust his FMLA leave. This argument, though, is premised on mistaken notions about the FMLA and the Illinois case law regarding workers' compensation. Dotson complains, for example, that BRP "forced" him to use FMLA leave against his will, terminated him while he was on leave for a work-related injury, and illegally counted time covered by workers' compensation as FMLA leave. The FMLA entitles eligible employees to up to twelve weeks of unpaid leave per year due to, among other things, a serious health condition that renders the employee unable to perform the functions of his or her job. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008); 29 U.S.C. § 2612(a)(1)(D). No one disputes that Dotson's injury was a serious health condition. And Dotson

does not dispute that he was absent from work for more than twelve weeks, unable, during that time, to perform the functions of the grind and trim job. His first argument, that he was forced to use FMLA leave, is particularly unusual. If Dotson was not taking FMLA leave, then he would have needed to provide some other reason to excuse his absence, a reason allowed by BRP's absenteeism policy. Under BRP's policy, any employee absent for more than twelve weeks was automatically terminated. Although BRP could have adopted a policy that was more generous than the minimum twelve weeks required by the FMLA, BRP was not required to do so. *See* 29 U.S.C. § 2652(a) (providing that the FMLA statute shall not be construed to diminish the obligation of employers to comply with any collective bargaining agreements or employee benefit plans that provide greater family and medical leave rights than those granted by the FMLA).

That leads to his second argument. Dotson explains he was absent for a work-related injury, apparently believing that an employer may not terminate an employee who is absent for that reason. Under *Hartlein*, though, an employer may terminate an employee for excessive absenteeism even if the absence is caused by a "compensable injury." In other words, under Illinois law, an employee may be terminated for excessive absenteeism even if the absence is due to a work-related injury covered by workers' compensation.[4] Moreover, an employer may

---

[4] In the same way that employers may provide leave policies more generous than the minimum required by the FMLA, so too may states legislate more generous leave. *See* 29 U.S.C. § 2651(b) ("Nothing in this Act . . . shall be construed to super-

(continued...)

designate an absence as an FMLA absence, provided the employer gives the employee appropriate notice. *See* 29 C.F.R. § 825.208. As we will see shortly, BRP provided that notice.

And that brings us to Dotson's third argument, that BRP illegally counted the time he was off work and collecting workers' compensation benefits toward his FMLA total. Dotson apparently believes that an employer may not run FMLA leave concurrently with workers' compensation. The FMLA regulations, however, allow employers to do just that, provided they supply the employee with appropriate notice. For example, the regulation addressing the interaction between the FMLA and federal or state anti-discrimination laws provides:

> An employee may be on a workers' compensation absence due to an on-the-job injury or illness which also qualifies as a serious health condition under FMLA. The workers' compensation absence and FMLA leave may run concurrently (subject to proper notice and designation by the employer).

29 C.F.R. § 825.702(d)(2). *See also* 29 C.F.R. § 825.207(d)(2) ("The Act provides that a serious health condition may result from injury to the employee 'on or off' the job. If

---

[4] (...continued)

sede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act"). Dotson has pointed to no provision of Illinois law that obligates BRP to grant employees more leave than the twelve weeks allotted by the FMLA. BRP's choice to cap allowed leave at the FMLA mandatory minimum was therefore lawful.

the employer designates the leave as FMLA leave in accordance with § 825.208, the employee's FMLA 12-week leave entitlement may run concurrently with a workers' compensation absence when the injury is one that meets the criteria for a serious health condition."). FMLA regulations also provide that:

> If the employee has been on a workers' compensation absence during which FMLA leave has been taken concurrently, and after 12 weeks of FMLA leave the employee is unable to return to work, the employee no longer has the protections of FMLA and must look to the workers' compensation statute or ADA for any relief or protections.

29 C.F.R. § 825.216(d). A number of other regulations address questions that arise when FMLA and workers' compensation run concurrently, further evidencing the lawfulness of this practice. *See* §§ 825.210(f), 825.220(d), 825.307(a)(1), 825.702(d)(1). All of these regulations make clear that if the employer provides adequate notice, FMLA may run concurrently with workers' compensation benefits.

BRP's notice took two forms here. First, the employee handbook specified "All FMLA time runs concurrent with short term disability and workers' compensation or any qualifying event." Second, in its January 19 letter to Dotson, BRP stated:

> When an employee misses work due to a work related injury, personal illness or family emergency the employee may also be eligible for FMLA Leave which runs concurrent with Workers' Compensation and Short Term Disability.

This same letter defined the requirements for eligibility and informed Dotson that he had already used 286 hours of FMLA leave, and had 194 hours remaining. BRP subsequently sent Dotson a letter noting that his FMLA leave for this injury began on January 13 and was expected to end on February 23. BRP thus adequately notified Dotson that the FMLA clock was running, and that it was running concurrently with his workers' compensation benefits. BRP was entitled to run FMLA leave concurrently with workers' compensation, could lawfully count those days toward the FMLA total, and could terminate an employee who exceeded the twelve-week allotment unless the employee claimed some other kind of absence that was excused under BRP's policies. Dotson has provided no alternate excuse under BRP's absenteeism policy.

Dotson next maintains that, under *Siekierka v. United Steel Deck, Inc.*, 868 N.E.2d 374 (Ill. App. 3 Dist. 2007), an absenteeism policy may not be used to justify a termination of an injured worker if the worker has no control over the time he is required to be absent and the employer has some control over the length of the absence. *Siekierka* is easily distinguished from Dotson's case on a number of issues. First, the employer in *Siekierka* had a markedly different absenteeism policy. United Steel Deck allowed twelve weeks of FMLA leave as mandated by federal law, and then, if an employee was still unable to return to work, the human resources manager and plant manager decided together on a case-by-case basis whether to grant extensions. The managers granted Siekierka an extension of a little less than one month and then refused to extend the leave further when Siekierka was still unable to return to work. BRP's policy involves no discretion; the com-

pany terminates all employees who exceed the twelve-week period for any reason. *Siekierka*, 868 N.E.2d at 377-78.

Second, United Steel Deck, through its insurer, "set in motion a process that made it impossible for Siekierka to return to work within the time granted to him by United Steel." 868 N.E.2d at 381. In particular, Siekierka's own doctor recommended surgery to correct his work-related injury. If Siekierka had received this treatment in the time frame recommended by his personal physician, he would have been able to return to work within the allotted time. However, prior to allowing the surgery, the employer's insurer insisted on a second opinion. Siekierka was forced to wait four weeks for an appointment with the second doctor, who then recommended that he wait another four weeks before deciding whether surgery was needed. The eight-week delay caused by the employer's insurer made it impossible for Siekierka to return to work in the time allowed by the managers. 868 N.E.2d at 377-81. In Dotson's case, the evidence is undisputed that Dotson could not have returned to his grind and trim post within the time remaining regardless of any actions taken by BRP in delaying his treatment. In other words, even if Dotson had been treated immediately, unlike Siekierka, he would not have been able to return to work within the 194 hours that remained in his allotted time.

Third, United Steel Deck failed to give Siekierka adequate notice about his use of FMLA time, failing to inform him until he was three weeks into the second doctor's "wait and see" approach that he had already used up eleven weeks of FMLA leave, and would be terminated if he did not return within the slightly extended time frame set by the company. In contrast, BRP gave all of the notices required by

the FMLA before terminating Dotson. As the *Siekierka* court commented, "United Steel's actions served to delay Siekierka's surgery at the same time he was left uninformed that the delay had the potential to cost him his job." 868 N.E.2d at 381. Under those circumstances, the court found that there existed a genuine issue of material fact as to whether there was a causal connection between Siekierka's exercise of workers' compensation rights and his discharge. Nothing about Dotson's case calls into question the company's stated reason for the termination, that Dotson exceeded the twelve-week leave period allowed by the company's absenteeism policy. We have considered Dotson's other arguments and find them equally unavailing. Because Dotson has no evidence linking his termination with his exercise of rights to workers' compensation benefits, the district court was correct to grant summary judgment in favor of BRP.

AFFIRMED.