In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2509

VIRGINIA HUNT,

*Plaintiff-Appellant,*

*v.*

DAVITA, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 10-cv-00602—**G. Patrick Murphy**, *Judge.*

ARGUED JANUARY 13, 2012—DECIDED MAY 4, 2012

Before POSNER, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Virginia Hunt had worked for defendant DaVita, Inc. for nineteen years when she had a heart attack requiring bypass surgery and went on medical leave. While on leave, she also received treatment for carpal tunnel syndrome. After six months of leave, DaVita terminated her employment pursuant to its established leave policy. DaVita told Hunt that she was eligible for re-hire to her position once she was

medically cleared to work again. Hunt then filed a lawsuit in state court alleging that she was fired in retaliation for her intention to file a workers' compensation claim related to her carpal tunnel syndrome. DaVita removed the lawsuit to the United States District Court, which granted summary judgment for DaVita on the retaliation claims. We affirm. Hunt has not offered any evidence that the relevant decision-maker even knew of her potential workers' compensation claim or was influenced by anyone who did know, so Hunt cannot show an act in retaliation.

Hunt first raises a jurisdictional issue, arguing that the district court should have remanded the case to state court for failure to satisfy the amount-in-controversy requirement for federal diversity jurisdiction under 28 U.S.C. § 1332. After the removal, Hunt disavowed and offered to return any damages that might be awarded in excess of $75,000. The district court did not err when it found, consistent with *LM Ins. Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542, 547 (7th Cir. 2008), that Hunt had not shown it was "legally certain" that the amount in controversy would not exceed $75,000. Hunt sought punitive damages in her complaint, and even a modest punitive-to-compensatory damages ratio of two or three to one could have led to an award in excess of $75,000. In addition, as the district court correctly noted, Hunt's post-removal disclaimer of damages exceeding $75,000 could not defeat federal jurisdiction after a proper removal based on the complaint. See *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) (post-removal amendment to complaint

or stipulation limiting damages did not require remand); *Back Doctors Ltd. v. Metropolitan Property and Casualty Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) (post-removal disclaimer limiting damages did not permit remand); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 429 (7th Cir. 1997) (post-removal stipulation to limit damages did not defeat diversity jurisdiction); *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (granting writ of mandamus to rescind remand order that had been issued based on post-removal stipulation to limit damages). The district court had subject matter jurisdiction here.

Turning to the merits, the relevant facts are straightforward and undisputed, and the district court explained them carefully. Hunt began her leave on August 17, 2009, and shortly after that, she acknowledged receipt of a notice concerning DaVita's leave policies. She was given three months of leave under DaVita's Family Medical Leave Act policy, and then another three months of leave under DaVita's separate Non-Work-Related Medical Leave of Absence policy. After the total of six months had passed, Hunt was still not cleared by her doctor to return to work and did not return. Pursuant to an established company policy, DaVita notified her that her employment was terminated effective February 28, 2010. Hunt's doctor cleared her to return to work later, on May 5, 2010. During this entire time a temporary worker filled in for Hunt at DaVita, but the worker was not permanently assigned to Hunt's position until August 21, 2010 — a full year after Hunt first went on leave.

While Hunt was on leave recovering from her heart surgery, she also sought treatment for carpal tunnel syndrome. She filed a workers' compensation claim based on that condition, but not until March 19, 2010 — several weeks *after* DaVita had terminated her. Hunt testified that she had previously told her supervisor, Beth Thompson, about her belief that the numbness in her hands was work-related. There is no more specific evidence in the record suggesting that Thompson actually knew of Hunt's intention to file a claim. Most important, though, there is no evidence that Thompson had anything to do with Hunt's termination. The termination was effected by Kathy Velasquez, a senior disability specialist who worked in a different DaVita office in Denver. Velasquez testified that she never met or spoke with Hunt, did not consult with anyone else at DaVita about the termination, and made the termination decision based entirely on the fact that Hunt had exhausted all of the leave allowed under DaVita's established policies. Hunt did not offer evidence contradicting this testimony, asserting only her belief that there was some retaliatory intent. Hunt also conceded that DaVita applied the same leave policy, without exception, to terminate more than three hundred other eligible employees who ran out of leave between January 1, 2009 and March 3, 2010, regardless of whether leave was the result of a work-related condition or not.

We review a grant of summary judgment *de novo*. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011). Hunt is an "at-will" employee under

Illinois law, so DaVita could have fired her for a good reason, no reason, or a bad reason, as long as the reason was not prohibited by law. For an at-will employee, failure to return to work after medical leave expires is not a reason prohibited by Illinois law. *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992) ("Illinois law does not obligate an employer to retain an at-will employee who is medically unable to return to his assigned position"). An employer may not, however, fire an employee to retaliate against her for her pursuit (or anticipated pursuit) of a workers' compensation claim. *Id.*; *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357 (Ill. 1978). To defeat DaVita's motion for summary judgment, Hunt needed to raise a genuine issue of material fact as to whether decision-maker Velasquez intended to retaliate against her for considering such a claim. But logic dictates that any inference of retaliatory intent must be based on the alleged retaliator's knowledge of the action allegedly retaliated for. *E.g.*, *Hiatt v. Rockwell International Corp.*, 26 F.3d 761, 769 (7th Cir. 1994) ("Evidence that those responsible for an employee's termination knew that he intended to file, or, as in this case had filed, a workers' compensation claim is essential to a retaliatory discharge action under Illinois law."), citing *Marin v. American Meat Packing Co.*, 562 N.E.2d 282, 286 (Ill. App. 1990). Hunt offers speculation but no actual evidence suggesting that Velasquez or anyone else involved in the decision even knew of her intended workers' compensation claim. Without such evidence, Hunt's retaliation claim fails as a matter of law.

To avoid the consequences of Velasquez's lack of knowledge about any workers' compensation claim, Hunt

argues that DaVita's leave policy is retaliatory on its face. DaVita's policy does not distinguish between employees on leave because of compensable work-related illnesses and injuries and employees on leave for other medical reasons. Hunt has not explained how a policy that is applied neutrally and without exception to hundreds of employees each year — and in this case without any knowledge of the circumstances of the leave taken or whether the leave stemmed from an injury or illness that might be compensable — can be described as retaliatory. It is well established that neutrally-applied leave policies of this sort are permissible. See *Dotson v. BRP U.S. Inc.*, 520 F.3d 703, 707 (7th Cir. 2008) ("an employer may fire an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury"), quoting *Hartlein*, 601 N.E.2d at 728. This court has approved policies stricter than DaVita's. See, *e.g.*, *Dotson*, 520 F.3d at 707-08 (automatic termination after exhaustion of minimum twelve-week FMLA leave).

Because employers are entitled to terminate at-will employees who do not return to work after their leave expires, it cannot be unlawful retaliation to terminate uniformly any employees because they did not return to work after their leave expired. Hunt cannot make up for the lack of evidence of individual retaliatory intent by alleging (again without evidence) that DaVita's entire leave policy was adopted to retaliate against employees who take leave. Hunt's only suggested alternative to DaVita's current leave policy would be a policy of indefinite retention, extending leave for as long as medically necessary. There is no legal basis here to

compel DaVita to adopt such a policy; in fact, the company's policy already seems to be more liberal than required by the Family and Medical Leave Act. Without evidence "that the termination was motivated by an unlawful intent to retaliate against the employee for exercising a statutory right to workers' compensation benefits," *Dotson*, 520 F.3d at 707, plaintiff Hunt has failed to raise a genuine issue of material fact. Summary judgment was properly entered in favor of DaVita.

Two other matters raised by the parties here warrant brief discussion. First, Hunt argues that the district court abused its discretion by refusing to strike the deposition testimony of decision-maker Velasquez based on objectionable conduct by DaVita's counsel during the deposition. During the deposition, DaVita's counsel conferred privately with the witness about exhibits as they were presented, allegedly pointing out policy language that plaintiff's counsel properly asked the witness herself to identify. Hunt further asserts that substantive discussions of testimony occurred in private conferences during breaks. DaVita's counsel responded that he was merely assisting and not suggesting testimony, and he claims no memory of whether private conferences occurred.

The conduct reflected in this record, at a minimum pointing out passages of documents as they are introduced to the witness, was not appropriate or professional. The fact-finding purpose of a deposition requires testimony from the witness, not from counsel, and without suggestions from counsel. Coaching and private

conferences (on issues other than privilege) that would be inappropriate during trial testimony are not excused during a deposition merely because the judge is not in the room.[1]

District courts have broad discretion in supervising discovery, including deciding whether and how to sanction such misconduct, for they are much closer to the management of the case and the host of intangible and equitable factors that may be relevant in exercising such discretion. *E.g.*, *Park v. City of Chicago*, 297 F.3d 606, 614 (7th Cir. 2002) (finding no abuse of discretion in choice not to impose sanction for discovery failure); *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 670-71 (7th Cir. 1996) (finding no abuse of discretion in choice to impose sanction for discovery failure). We defer to district courts' contemporaneous efforts to police discovery, reviewing only for abuse of discretion, of

---

[1] Hunt did not file a timely objection to the magistrate judge's non-dispositive pretrial discovery order as required by 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(a). Such a failure to object ordinarily waives the right to object on appeal. *E.g.*, *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003), quoting *United States v. Brown*, 79 F.3d 1499, 1503 (7th Cir. 1996); *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539-40 (7th Cir. 1986). This waiver rule is not jurisdictional, however, see *Video Views*, 797 F.2d at 540, and so is subject to a limited equitable exception when waiver would otherwise defeat the "ends of justice," *Brown*, 79 F.3d at 1504, and may itself be waived by the prevailing party. DaVita waived the waiver here, so we address the issue on its merits.

which there is no hint here. The magistrate judge determined that the conduct did not actually impede the purpose of the deposition. He did not abuse his discretion by refusing to strike the relevant testimony or to apply other sanctions.[2]

Second, DaVita suggested in the conclusion of its appellate brief that Hunt's arguments on appeal are so frivolous that we should order her to show cause why she should not be sanctioned. See *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 760-61 (7th Cir. 2005). Since 1994, Federal Rule of Appellate Procedure 38 has authorized such sanctions only after either "a separately filed motion or notice from the court and a reasonable opportunity to respond." DaVita could have filed such a motion but did not, choosing instead merely to ask this court to launch the sanctions process. We decline to do so. We see no need to take a step that DaVita itself could have taken, albeit subject to the caution that a groundless request for Rule 38 sanctions may itself be sanctionable. See *Meeks v. Jewel Cos.*, 845 F.2d 1421, 1422 (7th Cir. 1988) (denying sanctions against appellant and declining to award appellate costs

---

[2] Hunt also complains that the district court allowed DaVita to file a reply brief. Southern District of Illinois Local Rule 7.1(c)(2) allows for such briefs "in exceptional circumstances." We have repeatedly held that district courts are entitled to considerable deference in the interpretation and application of their local rules. *E.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011); *Harmon v. OKI Systems*, 115 F.3d 477, 481 (7th Cir. 1997). No abuse of discretion occurred here.

as modest sanction for frivolous request for sanctions); see also *Foy v. First National Bank of Elkhart*, 868 F.2d 251, 258 (7th Cir. 1989) (awarding attorney fees incurred in defending against a frivolous request for sanctions). Also, there is certainly an equitable element to sanctions issues. In view of the behavior of DaVita's counsel during the Velasquez deposition, we would not be inclined to exercise our discretion to impose sanctions on only one side of this lawsuit. In any event, Hunt's arguments on appeal were weak but fell short of frivolous.

The judgment of the district court is AFFIRMED.