In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2913

JAMES BAPTIST,

*Plaintiff-Appellant,*

*v.*

FORD MOTOR COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 8974 — **Virginia M. Kendall**, *Judge*.

ARGUED APRIL 26, 2016 — DECIDED JUNE 27, 2016

Before KANNE, SYKES, and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge*. James Baptist, a former forklift oper-
ator at Ford Motor Company, sued Ford after he was fired—
in his view—in retaliation for exercising his workers' com-
pensation rights. The district court granted Ford's motion for
summary judgment. Baptist contends that summary judg-
ment should not have been granted because the district court
drew improper inferences. Because there is a genuine issue
of material fact about Ford's motivation for his discharge,

we vacate the grant of summary judgment and remand for further proceedings.

## I. Background

Unless otherwise noted, the following facts are undisputed and presented in the light most favorable to Baptist, the party opposing summary judgment. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015); *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 849 (7th Cir. 2015).

Baptist began working at Ford's assembly plant in Chicago in February 2012. He operated a forklift that moved products from trucks to storage. In April, less than three months into the job, Baptist inadvertently drove a forklift into a pillar and jammed his left hand on the steering wheel, injuring his left wrist. He visited Ford's medical department and submitted an injury report.

Baptist's injury report triggered Ford's workers' compensation review, and his claim for treatment coverage was investigated by benefits administrator Jessica Nawracaj. Nawracaj was employed by Bartech, a company that provides Ford with workers' compensation benefits administration services. Nawracaj and Ford's physician, Dr. Patricia Lewis, doubted Baptist's account of his injury; they emailed each other that Baptist did not report the incident properly and that he refused to release medical records from a prior workers' compensation case he brought against another employer involving an injury to his other wrist. Nawracaj and Dr. Lewis also discussed forwarding the information from their investigation to the labor relations department, a subset of Ford's human resources department.

Ford's workers' compensation fund paid for Baptist's initial visit to a doctor—Dr. William Heller, an orthopedic surgeon—who ordered an MRI, diagnosed Baptist with a ligament tear in his left wrist, and issued Baptist a wrist brace. Ford denied further coverage. Baptist disagreed with the denial and pushed Ford to cover more treatment. The parties are now litigating Baptist's workers' compensation claim before the Illinois Workers' Compensation Commission.

Baptist worked for the next two months until June 24, when he left work early to seek additional medical attention because the pain in his wrist had worsened and he did not think he could continue working with it. Baptist again saw Dr. Heller, who diagnosed him with a complete ligament tear in his left wrist and recommended surgery. Dr. Heller submitted a form to Ford opining that Baptist was not able to perform the essential function of his job, though he added that Baptist was neither totally disabled nor "[t]otally unable to perform his/her job." Because Dr. Heller did not specify when Baptist could return to work, Ford sought additional information. Dr. Heller submitted another form in which he recommended that Baptist be off work for four to six weeks after surgery but cleared him to return to work as of July 2 so long as he did not lift or grip over five pounds with his left hand.

Dr. Lewis testified that she reviewed these forms, and based on her knowledge of the job requirements and the injury, she determined that the restriction did not affect any activity necessary to operate a forklift, removed the note of the restriction from Baptist's file, and cleared him to work. Baptist, however, believed that his injury and medical

restriction prevented him from operating the forklift and refused to resume his work; he asked for another position. He did not work his forklift job for the next several days, and on July 23 Ford suspended him for one month.

When Baptist returned from his suspension on August 24, he met with Dr. Lewis and Ford's labor representative, Quandra Speights. Baptist was told that the only available work was as a forklift driver, and he was instructed to return to that position. In his deposition Baptist testified that he was told by Speights that he would be fired unless he agreed to state that his injury did not happen at work, in which case he would be given an approved leave of absence. Speights denied this assertion. Baptist told Dr. Lewis and Speights that he could not perform the forklift job and feared that it would exacerbate his injury. After Baptist did not return to his position on August 24, 25, or 26, he was discharged by Speights for having three consecutive absences without justification, a dischargeable offense under Ford's Collective Bargaining Agreement.

In November 2013 Baptist sued Ford in Illinois state court, asserting that Ford discharged him in retaliation for exercising his rights under the Illinois Workers' Compensation Act, in violation of 820 Ill. Comp. Stat. 305/4(h). Ford removed the case to federal district court based on diversity of citizenship. Ford moved for summary judgment, arguing that Baptist had been discharged because of his absences without justification. Baptist responded both that he was discharged because of Ford's hostility to his workers' compensation claim and that a fact question existed over whether he physically could return to work. To support his assertion that there was a medical dispute over his ability to

work, Baptist submitted an affidavit from Dr. Heller in which he stated that the restrictions on the lifting and gripping would prevent Baptist from driving a forklift, and that "no full duty return to work date could even be entertained until it was first determined how he was progressing from the surgery."

The district court granted Ford's motion for summary judgment. The judge found that no reasonable jury could find that Baptist's discharge was causally related to, or primarily in retaliation for, Baptist's exercise of his rights under the Workers' Compensation Act. The judge accepted Ford's contention that it had a valid, nonpretextual basis for discharging Baptist: Ford had discharged him for "a straightforward application of [its] three-day quit rule." The judge pointed out that Baptist had not responded to the last six paragraphs of Ford's statement of undisputed material facts, so she was treating these facts as admitted, including the statement that "Speights did not rely on anything other than Baptist's attendance records in making the decision to terminate his employment."

## II. Analysis

On appeal Baptist challenges the district court's conclusion that he did not provide a factual foundation to support a common-law cause of action for retaliatory discharge under Illinois law. To prevail on such a claim, Baptist must, among other things, "affirmatively show that the discharge was primarily in retaliation for [his] exercise of a protected right." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012) (internal quotation marks and citation omitted); *see Dixon Distrib. Co. v. Hanover Ins. Co.*, 612 N.E.2d 846, 852 (Ill. App. Ct. 1993). Baptist argues a reasonable jury

could infer from facts in the record that Dr. Lewis's hostility to his request for workers' compensation to cover his treatment motivated her to clear him for work without regard to his medical condition. According to Baptist, the district judge should have recognized that the conflicting opinions of Dr. Heller (Baptist's private orthopedist) and Dr. Lewis (Ford's doctor) over his ability to operate a forklift preclude summary judgment because a fact question exists over the cause of his discharge. Speight's attempt to coerce Baptist into abandoning his workers' compensation claim, Baptist adds, is further evidence that precludes summary judgment.

Summary judgment was improper here because there is conflicting evidence about Ford's primary reason for discharging Baptist. Although he was fired because of his attendance record, his absenteeism is factually bound up with the disagreement about whether he was physically able to drive a forklift. Speights, the decision-maker who fired Baptist for absenteeism, relied on Dr. Lewis's conclusion that Baptist could drive a forklift. But it is undisputed that Dr. Heller advised Ford that Baptist needed surgery followed by four to six weeks off work, though he could return to work so long as he did not lift or grip more than five pounds with his left hand. Even if Dr. Lewis believed that these restrictions did not affect Baptist's ability to operate a forklift, her email exchanges with Nawracaj allow an inference that she was hostile to Baptist's exercise of his workers' compensation rights.

A triable issue also exists regarding whether Baptist was put to the impracticable choice between keeping his job or giving up a key argument for workers' compensation coverage (regarding the nature and extent of his injury). "The

cause of action for retaliatory discharge deters employers from presenting their employees with the untenable choice of retaining their jobs or pursuing compensation for their injuries through workers' compensation proceedings." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 767 (7th Cir. 2013); *see Siekierka v. United Steel Deck, Inc.*, 868 N.E.2d 374, 381–82 (Ill. App. Ct. 2007) ("This is the kind of choice prohibited under *Kelsay* and if United Steel's intent was to create this dilemma, its motive was retaliatory."). While Dr. Lewis testified that she cleared Baptist to work because the restrictions did not impact his job, viewing the facts in a light most favorable to Baptist, as we must, the circumstances surrounding his discharge plausibly suggest that his pursuit of the workers' compensation claim motivated Dr. Lewis to clear Baptist to operate a forklift and undercut his position for workers' compensation coverage. In other words, a reasonable jury could infer that the motive behind Dr. Lewis's decision to clear Baptist to work was to pressure him to compromise or forgo the exercise of his workers' compensation rights.

A dispute also exists over whether Speights told Baptist that he could save his job if he recharacterized his injury as personal, only to be fired after he refused. While Ford denies that Speights made such a statement (and argues that it is immaterial), Baptist says that she did, thus calling into question whether Ford's reason for discharging Baptist was pretextual. *See Brooks*, 729 F.3d at 767–68; *Siekierka*, 868 N.E.2d at 381–82. If a jury believed Baptist's testimony, Ford's post-hoc assertion that Speights lacked the authority to remove Baptist's absences and save his job does not make her alleged coercion immaterial. This assertion requires weighing the credibility of Baptist's and Speights's testimony about whether these statements were made and cannot be

rejected at summary judgment. *See Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631–33 (7th Cir. 2009).

Accordingly, the district court's grant of summary judgment is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.